# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NELSON NARCISSE and** | |
| **INARAY E. NARCISSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2659** |
| **TURNER INDUSTRIES GROUP, LLC** | **SECTION "C"** |

## ORDER AND REASONS[1]

This matter comes before the Court on Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant, Turner Industries Group, LLC ("Turner"). (Rec. Doc. 14). The plaintiffs, Nelson Narcisse ("Mr. Turner") and his wife, Inaray E. Narcisse ("Mrs. Turner"), oppose the motion. (Rec. Doc. 20). Having considered the record, the memoranda of counsel and the law, the Court PARTIALLY GRANTS and PARTIALLY DENIES the motion. It is granted as to the plaintiffs' claims of negligence, intentional infliction of emotional distress, pattern or practice of racial discrimination, and the loss of consortium claims derived from those claims and, also, the loss of consortium claims based on Title VII or Louisiana's anti-discrimination statute. It is denied as to the plaintiffs' claims of wrongful termination and defamation.

## I. Background

Turner allegedly employed Mr. Narcisse as a welder and mechanic at its Garyville, Louisiana location from March, 1989 through October, 12, 2010. (Rec. Doc. 1-1 at ¶ 2). Over the course of his employment, Mr. Narcisse had allegedly been subject to, and passed, ten random urinalysis drug tests. (Rec. Doc. 1-1 at ¶ 3). Mr. Narcisse claims that he was tested again on or about October 4, 2010, which was the first time that Turner had administered a hair drug test to employees. (Rec. Doc. 1-1 at ¶ 14). He passed the alcohol and urinalysis drug tests, but his hair tested positive for

---

[1] David Gershel, a third-year law student at Tulane University, assisted in the preparation of this document.

cocaine metabolites. (Rec. Doc. 1-1 at ¶¶ 3, 6, 10). Turner contracted with DISA, Inc. ("DISA") and Comprehensive Occupational Resources, LLC ("Core") to collect the samples and in turn, Core contracted with Psychemedics Corporation ("Psychemedics") to perform the chemical analysis. (Rec. Doc.1-1 at ¶¶ 4, 9, 10). Mr. Narcisse claims that Turner terminated his employment upon learning of the presence of cocaine metabolites in his hair sample, and escorted him off of the property in front of his co-workers on or about October 12, 2010. (Rec. Doc. 1-1 at ¶ 15).

Mr. Narcisse contends that the test returned a false positive result. (Rec. Doc. 1-1 at ¶ 13). He claims that site personnel performed the hair specimen collection process in an unsanitary and unsterile manner, which may have resulted in the alleged false positive test result. (Rec. Doc. 1-1 at ¶ 6). Mr. Narcisse claims he expressed his concerns about the collection methods and conditions to his superintendent and Turner site manager, but was still terminated. (Rec. Doc. 1-1 at ¶¶ 13, 14). On or about October 19, 2010, Mr. Narcisse claims he requested and paid for a second drug test, but that DISA refused to collect a new hair sample and retested the original sample, again resulting in a positive test result for cocaine metabolites. (Rec. Doc. 1-1 at ¶¶ 20, 21). Feeling a mistake had been made, Mr. Narcisse paid for a hair test from an independent drug testing company, Quest Diagnostics, Inc., on or about November 12, 2010, less than 40 days after the first hair drug test at issue. (Rec. Doc. 1-1 at ¶¶ 23, 24, 25). The test results came back negative for the presence of any illegal substances. (Rec. Doc. 1-1 at ¶ 25). Mr. Narcisse claims he forwarded the test results to Turner, asking for reinstatement of his previous job, and that Turner refused. (Rec. Doc. 1-1 at ¶¶ 26). Mr. Narcisse claims that hair drug testing discriminates against non-Caucasian racial and ethnic groups because those groups have darker skin pigments and therefore higher concentrations of

melanin in their skin and hair which can cause false positives in hair drug tests. (Rec. Doc. 20 at 17). Mr. Narcisse is an African-American man. (Rec. Doc. 1-1 at ¶ II 2(a)).

Turner allegedly participates in the North American Substance Abuse Program ("NASAP") which specifies consequences for positive drug test results and maintains a database allowing fellow member-employers to search the system and determine if a current or potential employee has ever failed a drug test. (Rec. Doc. 1-1 at ¶ 27). Mr. Narcisse claims that Turner reported the test results to the NASAP database. (Rec. Doc. 1-1 at ¶ 28). Furthermore, Mr. Narcisse alleges that Psychemedics or DISA published the drug test results in the VECTOR database, which serves the same purpose of storing and reporting employee drug test results as the NASAP database. (Rec. Doc. 1-1 at ¶¶ 29, 30, 31). Mr. Narcisse claims that the publication of the false positive test results have harmed his employment prospects since his termination from Turner. (Rec. Doc. 1-1 at ¶¶ 45, 46).

Mr. Narcisse filed a claim with the Louisiana Commission on Human Rights and Equal Employment Opportunity Commission for discrimination based on his race. (Rec. Doc. 1-1 at ¶ I 1(f)). Then Mr. and Mrs. Narcisse brought this action in which they asserted claims against Turner under Title VII, 42 U.S.C. §§ 1981, 2000e, and Louisiana Revised Statutes §§ 23:301, *et. seq*. (Rec. Doc. 1-1 at ¶ IX 35(d), (e)). Turner filed this Partial Motion to Dismiss asking the Court to dismiss the plaintiffs' claims for wrongful termination, violation of Louisiana Drug Testing Statute,[2] negligence, intentional infliction of emotional distress, defamation, pattern and practice discrimination, and loss of consortium, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Rec. Docs. 14 at 1, 26 at 4).

---

[2] LA. R.S. §§ 49:1001-1021.

## II. Standard of Review

Motions to Dismiss for Failure to State a Claim are to be viewed with disfavor and are rarely granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint in whole or in part where the plaintiff has failed "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d. 190, 196 (5th Cir.1996). Although courts are required to take as true all factual allegations in the complaint, they are not bound to accept labels, conclusions, or formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right of relief above the speculative level." *Id.* (citations and quotations omitted). To defeat a motion to dismiss, a complaint must "contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that the evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (citations omitted). Therefore, a plaintiff must "plead specific facts not mere conclusory allegations" to avoid dismissal for failure to state a claim. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

**III. Law and Analysis**

**A. Wrongful Termination**

Under Louisiana law, "[a]n employer is at liberty to dismiss an at-will employee at any time for any reason without incurring liability for the discharge, provided the termination does not violate any statutory or constitutional provision, such as anti-discrimination laws." *Johnson v. Acosta*, 2010 WL 4025883, at *6 (E.D. La.. 2010); *see also Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 758 (5th Cir.2005); *Fletcher v. Wendelta, Inc.*, 43,866–CA (La. App. 2 Cir. 1/14/09) 999 So.2d 1223, 1229-30. When an employee's job is for an indefinite term the Louisiana Civil Code provides the default rule of employment at-will. LA. CIV. CODE ANN. art. 2747; *Quebedeaux v. Dow Chem. Co.*, 01-2297, pp. 4-5 (La.6/21/02); 820 So.2d 542, 545. "Reasons for termination need not be accurate, fair or reasonable. An employee hired for an indefinite term has no action against his employer for wrongful discharge." *Johnson*, 2010 WL 4025883, at *7. The employment at-will doctrine is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee, including the basis of race.[3] *Sanchez v. Georgia Gulf Corp.*, 2002-0904 (La. App. 1 Cir. 11/12/03); 860 So. 2d 277, 280.

Mr. Narcisse does not dispute that he was an at-will employee. Rather, he alleges that he was wrongfully terminated as a result of an unlawful hair drug test which violated Louisiana's Drug Testing Statute and discriminated against non-Caucasian employees. (Rec. Doc. 1-1 at ¶¶ 48, 49, I 1(d) & 1(e), IX 35(d)). Mr. Narcisse claims that hair drug testing discriminates against

---

[3] An employee cannot be terminated because of his race, sex, or religious beliefs. 42 U.S.C. § 2000e; 42 U.S.C. § 1981; LA. R.S. § 23:301.

5

non-Caucasian racial and ethnic groups because non-Caucasians with darker skin pigments have higher concentrations of melanin in their skin and hair which can result in a false positive presence of cocaine in hair drug tests. (Rec. Doc. 20 at 17). Additionally, plaintiffs argue that under La. R.S. section 49:1005(A), if a drug test may result in negative consequences, it must be conducted in a Substance Abuse and Mental Health Services Administration ("SAMHSA") certified laboratory following the SAMHSA guidelines.[4] (Rec. Doc. 20 at 9).The test was not performed in a SAHMSA-certified lab or according to SAHMSA guidelines and therefore a hair test cannot be in compliance with the statute, because SAMHSA does not cover or permit hair drug tests. Mandatory Guidelines for Federal Workplace Drug Testing Programs, 73 Fed. Reg. 71,858-01 (Nov. 25, 2008). Defendants argue that Louisiana law provides no cause of action for wrongful termination as it relates to the drug test at issue.[5] (Rec. Doc. 14-1 at 9). Defendant notes that in *Sanchez v. Georgia Gulf Corp.* the Louisiana First Circuit held that the Louisiana Drug Testing Statute does not subject an employer to liability for wrongful termination of an at-will employee for failure to follow the statutory requirements contained therein. *Sanchez*, 860 So.2d at 282-83. The line of reasoning in *Sanchez* would likely apply to this case. While *Sanchez* involving certified urinalysis drug tests and here Mr. Narcisse complains about an uncertified hair test, Louisiana precedent only cites to discrimination statutes as those that cannot be violated when terminating an at-will employee. *Sanchez*, 860 So.2d at 280, n.4; *Quebedeaux v. Dow Chem. Co.*, 2001-2297 (La. 6/21/02); 820 So. 2d 542, 546, n.8. Furthermore, the court

---

[4] The statute also permits drug testing in CAP-FUDT (College of American Pathologists / Forensic Urine Drug Testing) certified laboratories, but these only cover urinalysis.

[5] Defendant does not dispute that Louisiana law provides a cause of action for wrongful termination on the basis of Mr. Narcisse's race, and has not moved to dismiss that claim. (Rec. Doc. 14-1 at 1, n..2).

explicitly held in *Sanchez* that "[La. R.S. 49:1005(A) does not] state that an employer's failure to follow the statutory requirements set forth therein will subject it to liability for wrongful termination, nor [does it] prohibit the employer from terminating an at-will employee under the circumstances."*Sanchez*, 860 So.2d at 283.

However, Mr. Narcisse's arguments for his wrongful termination claim rest on the fact that Turner's failure to comply with the drug testing statute is the cause of the discrimination since hair drug tests allegedly discriminate against non-Caucasians, such as Mr. Narcisse, in violation of state and federal anti-discrimination statutes. Turner only moves to dismiss the plaintiffs' wrongful termination claim based on the drug test and not the claim based on racial discrimination. (Rec. Docs. 14-1 at 1; 24-2 at 2). If Mr. Narcisse's wrongful termination claim rested on the fact that Turner failed to follow the statutory requirements of the Louisiana Drug Testing statute then the claim would be dismissed. However, that is not the case, as Turner is alleged to have failed to comply with the Federal and Louisiana anti-discrimination statutes. Therefore, because plaintiffs' allegations claim a right to relief above the speculative level, defendant's motion to dismiss plaintiffs' wrongful termination claim is denied.

**B. Negligence**

Plaintiffs' negligence claims stem from the allegedly negligent administration of the hair drug test. (Rec. Doc. 1-1 at ¶¶ 32-38). In Louisiana, an employee's negligence claims for injuries arising in the workplace are precluded by the Workers' Compensation Statute. LA. R.S. § 23:1032; *Bourgeois v. Curry*, 2005-0211 (La. App. 4 Cir. 12/14/05); 921 So. 2d 1001, 1010; *see also Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 851 (5th Cir. 2000). When a plaintiff does not allege mistreatment outside of the worksite or beyond work hours, any claims grounded in

7

negligence are precluded. *Bourgeois*, 921 So. 2d at 1010. Mr. Narcisse concedes that the drug test took place on the premises of Turner's Grayville, Louisiana facility where he worked during regular working hours. (Rec. Doc. 1-1 at ¶ 6). Thus, Mr. Narcisse's negligence-based claims arising from the allegedly negligently administered drug test are precluded by the Louisiana Workers' Compensation Statute.

**C. Intentional Infliction of Emotional Distress**

Louisiana Revised Statutes section 23:1032, makes worker's compensation an employee's exclusive remedy for a work-related injuries, except for claims based on an intentional act. *White v. Monsanto Co.*, 585 So. 2d 1205, 1208 (La. 1991). Intentional infliction of emotional distress is an intentional tort. In order to recover on a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain, or substantially certain, to result from his conduct. *Id.* at 1209. In order to show that the defendant's conduct was extreme or outrageous, the plaintiff must show that the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. *Nicholas v. Allstate*, 99-2522 (La. 8/31/00); 765 So.2d 1017, 1022; *see also Henson v. Bassett Furniture Indus.*, 2000 U.S. Dist. LEXIS 14877 (E.D. La. 2000). Conduct which is merely torturous or illegal does not rise to the level of being extreme and so outrageous. *Nicholas*, 765 So.2d at 1025. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. *White*, 585 So.2d at 1209. Activity in the Louisiana workplace

8

that can give rise to a cause of action for intentional infliction of emotional distress, is limited "to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas*, 765 So.2d at 1026.

Here, Mr. Narcisse alleges that Turner is liable for intentional infliction of emotional distress because it negligently administered the hair drug test and reported the allegedly false positive results to third parties, hampering Mr. Narcisse's future employment opportunities. Additionally, Mr. Narcisse alleges that Turner intentionally disregarded evidence that the test results were false and that there were problems with the collection methods. Finally, Mr. Narcisse asserts Turner is liable for intentional infliction of emotional distress for labeling him a criminal, a drug user, and escorting him from the premises in front of his co-workers. (Rec. Doc. 20 at 20-21). These allegations fail to show that Turner knew severe emotional distress would be substantially certain to result from terminating Mr. Narcisse's employment based on the drug test and reporting the allegedly false positive results to third-party databases. Furthermore, Turner's conduct was not so extreme or outrageous as to be regarded as "atrocious and utterly intolerable in a civilized community." Mr. Narcisse did not allege a pattern of behavior that rises to that threshold as it was only an isolated incident.

**D. Defamation**

Mr. Narcisse also asserts a claim for defamation. "Defamation is an invasion of a person's interest in his reputation and good name." *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993). To successfully recover for defamation, a plaintiff must prove the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) injury resulting from the alleged conduct. *Brannan v. Wyeth Laboratories,* Inc., 526 So.2d 1101, 1105

(La. 1988). In order to prevail on a defamation claim, a plaintiff must prove "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Trentecosta v. Beck*, 96-2388 (La. 10/21/97); 703 So. 2d 552, 559 (citing *Sassone*, 626 So.2d 345, 350). If even one of the elements of the tort is lacking, the cause of action fails. *Douglas v. Thomas*, 31,470, p. 3 (La. App. 2 Cir. 2/24/99); 728 So.2d 560, 562. Even when a plaintiff makes a prima facie case showing of the elements of defamation, recovery may be precluded if the defendant shows that the statement was true, or that it was protected by an absolute or qualified privilege. *Costello v. Hardy*, 2003-1146, p. 15, (La. 1/21/04); 864 So.2d 129, 141.

Defamatory words are those that tend to harm the reputation of another so as to lower the person's standing in the community, to deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Fitzgerald v. Tucker*, 98-2313 (La.6/29/1999), 737 So.2d 706, 716. In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. *Lemeshewsky v. Dumaine*, 464 So.2d 973, 975 (La. App. 4 Cir.1985). "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Costello*, 864 So.2d at 140. When the plaintiff proves publication of words which are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant. *Id.*

Plaintiffs claim Turner defamed Mr. Narcisses by implicitly and/or explicitly calling Mr. Narcisse a cocaine user and a liar when the allegedly false positive hair drug test results were

published by Turner, or its agents, in databases which send such information to third party companies. (Rec. Doc. 20 at 24). Mr. Nacisse claims this lowered his standing in the estimation of other Turner employees who knew the test results or suspected such when he was escorted off of the premises in front of them. *Id.* The defendant argues that the drug test result, and therefore cocaine use, is true and also that DISA and Psychemedics, but not Turner, published the results. Furthermore, defendant argues it is protected by the privilege of section 49:1012 of the Louisiana Drug Testing Statute and that the plaintiffs failed to show that Turner acted with malice.

Criminal accusations, here use of cocaine, are defamatory per se, and, as a result, malice and falsity are presumed. Additionally, the alleged defamatory words harmed Mr. Narcisse's personal and professional reputation which also qualifies as defamatory per se. The publication of the test results in the various national databases, allegedly with Turner's consent, constitutes an unprivileged publication to a third party. Furthermore, the publication of the defamatory words have allegedly harmed Mr. Narcisse's employment prospects and lowered his standing in the eyes of his former co-workers at Turner.

Turner is not eligible for the privilege asserted because it allegedly did not comply with Louisiana's Drug Testing Statute's section 49:1012. To avail itself of the privilege, section 49:1012 requires that an employer conduct the drug test in accordance with the drug testing statute. LA. R.S. 49:1012. Section 49:1005 of Louisiana's Drug Testing Statute does not permit hair testing to result in negative employment consequences. LA. R.S. §§ 49:1005, 49:1012. Therefore Turner is not eligible for the privilege of section 49:1012 as it allegedly did not comply with the statute. Regarding the veracity of the drug test, as there has not been a chance

11

for discovery, Turner cannot assert that the test result was in fact accurate as a defense. Therefore, the plaintiffs have set forth sufficient facts to sustain their defamation claim and defendant has not presented a defense in the form of a qualified privilege or the truthful nature of the statements to warrant dismissal.

**F. Pattern or Practice Discrimination**

When alleging that a defendant engaged in a pattern or practice of racial discrimination under Title VII, 42 U.S.C. §§ 1981, 2000e, plaintiffs must "establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure-the regular rather than the unusual practice." *Bazemore v. Friday*, 478 U.S. 385, 398 (U.S.1986) (citations and quotations omitted). Isolated or sporadic discriminatory acts by an employer do not constitue pattern or practice discrimination. *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). Plaintiffs asserted a claim for pattern and practice of racial discrimination in their amended complaint based on the allegedly discriminatory drug test and the allegedly discriminatory termination of Mr. Narcisse's employment. (Rec. Doc. 1-1 at IX. ¶ 35(d)). Furthermore, not only do the plaintiffs reference an isolated incident, but plaintiffs chose not to respond to Turner's arguments in its partial motion to dismiss regarding this claim. Therefore, the motion to dismiss is granted on this claim.

**F. Loss of Consortium**

Mrs. Narcisse makes derivative claims for damages, including, loss of enjoyment of life, lost medical benefits, loss of consortium and emotional pain and suffering. However, the Louisiana anti-discrimination statutes and Title VII do not apply to anyone but the employee who was the victim of discrimination. *See* 42 U.S.C. §§ 1981, 2000e; LA. R.S. § 23:303; *Salard*

*v. Lowe's Home Centers, Inc.*, 904 F. Supp. 569, 572 (W.D. La. 1995) (holding that Louisiana's anti-discrimination statutes do not "provide[] for recovery for loss of consortium or any other derivative damages sustained by persons other than the direct victim of the alleged discrimination."); *Lester v. Sec'y of Veteran Affairs*, 514 F. Supp. 2d 866 (W.D. La. 2007) ("As to Mr. Lester's loss of consortium claim, the Court notes that 'no cause of action for loss of consortium is available under Title VII.'"). As Mrs. Narcisse was not an employee of Turner, she cannot assert a derivative claim under either Title VII or Louisiana's anti-discrimination laws.

In addition to granting the partial motion to dismiss in regards to the loss of consortium claim based on the anti-discrimination statutes, to the extent that the partial motion to dismiss is granted as to any of Mr. Narcisse's claims, Mrs. Narcisse's derivative claims for loss of consortium damages similarly fail. However, Mrs. Narcisse may assert a derivative claim for loss of consortium pertaining to the defamation claim, which is not dismissed. *Maurice v. Snell*, 632 So. 2d 393, 396 (La. Ct. App. 1994)**.**

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Partial Motion to Dismiss filed by Turner (Rec. Doc. 14) is hereby PARTIALLY GRANTED and PARTIALLY DENIED.

- IT IS GRANTED as to Mr. Narcisse's claims of negligence, intentional infliction of emotional distress, and pattern or practice of racial discrimination.

- IT IS GRANTED as to Mrs. Narcisse's loss of consortium claims derived from Mr. Narcisse's claims of negligence, intentional infliction of emotional distress, and pattern

13

or practice of racial discrimination now dismissed or arising from claims based on Title VII or Louisiana's anti-discrimination statute which precludes loss of consortium claims.

- IT IS DENIED as to Mr. Narcisse's wrongful termination and defamation claims.
- IT IS DENIED as to Mrs. Narcisse's loss of consortium claim derived from Mr. Narcisse's defamation claim.

New Orleans, Louisiana, this 30th day of April, 2012.

												**HELEN G. BERRIGAN**
												**UNITED STATES DISTRICT JUDGE**